Galen M. Gentry, SBN 308873
HUGHEY PHILLIPS, LLP
520 9th Street, Suite 230
Sacramento, California 95814
Telephone: 916.758.2100
Facsimile: 916.758.2200
ggentry@hugheyphillipsllp.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

KAITLYN CUMBIE, an individual,

        Plaintiff,

    v.

MARK TIBBLES, an individual; MARK TIBBLES
ENTERPRISES, LLC, a California limited liability
company; TIBBLES PROPERTY SOLUTIONS,
LLC, a California limited liability company; and
DOES 1 through 10, inclusive,

        Defendants.

Case No. 2:21-cv-01090-JAM-AC

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANTS MARK
TIBBLES, MARK TIBBLES
ENTERPRISES, LLC AND TIBBLES
PROPERTY SOLUTIONS, LLC**

**[FRCP 55(b)(2)]**

Date:      May 25, 2022
Time:      10:00 a.m.
Courtroom:  26

Action Filed: June 18, 2021
Trial Date: None

# TABLE OF CONTENTS

I. INTRODUCTION…………………………………………………………..……   2

II. PROCEDURAL HISTORY……………………………………………………..   2

III. FACTUAL BACKGROUND………………………………………………….   3

IV. ARGUMENT……………………………………………………………………   5

   A.  Jurisdiction and Service of Process…………………………………………   5

   B.  Default Judgment Is Appropriate…………………………………………...   6

     1. Plaintiff Will Be Prejudiced…………………………………………...   7

     2. Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint…….   7

       a. Promissory Fraud…………………………………………………   7

       b. Accounting…………………………………………………………   8

       c. Conversion………………………………………………………...   8

       d. Breach of Contract…………………………………………………   9

       e. Breach of Fiduciary Duty…………………………………………   10

       f. Unfair Business Practices…………………………………………   12

     3. The Sum of Money at Stake in the Action…………………………………   13

     4. Possibility of Dispute Concerning Material Facts…………………………   14

     5. Excusable Neglect…………………………………………………………   14

     6. Policy Favoring Decisions on the Merits…………………………………   15

   C.  Relief Sought………………………………………………………………   15

     1. Compensatory Damages……………………………………………………   15

     2. Prejudgment Interest………………………………………………………   16

     3. Costs………………………………………………………………………   17

V. CONCLUSION…………………….…………………………………..……......   17

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>

3

*Allegro Consultants, Inc. v. Wellington Techs., Inc.*

    No. 13-cv-02204-BLF, 2016 WL 1623941, at *2 (N.D. Cal. Apr. 25, 2016)……………7

4

*Barquis v. Merchants Collection Assn.*

5

    (1972) 7 Cal.3d 94……………………………………………………………..……...12

6

*Bd. of Trs. v. Core Concrete Constr., Inc.*

7

    No. 11-02532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012)…………………13

8

*Bolt v. Merrimack Pharm., Inc.*

9

    (2005 US Dist.), Lexis 46591*21 (E.D. Cal. Sept. 20, 2005)……………………..…….16

10

*Brown v. Wells Fargo Bank, N.A.*

    (2008) 168 Cal.App.4th 938……………………………………………..……………10

11

*Capitol Records v. Barrera*

12

    No. 06-07212-JSW, 2007 WL 1113949, at *3 (N.D. Cal. Apr. 13, 2007)…………..….14

13

*Children's Hosp. & Med. Ctr. v. Bonta*

14

    (2002) 97 Cal.App.4th 740……………………………………………………..…16

15

*Committee on Children's Television, Inc. v. General Foods Corp.*

    (1983) 35 Cal.3d 197………………………………………………………………....10

16

*Dr. JKL Ltd. v. HPC IT Educ. Ctr.*

17

    749 F. Supp 2d 1038, 1048 (N.D. Cal. 2010)……………………………………..…7

18

*Eitel v. McCool*

19

    782 F.2d 1470, 1471-72 (9th Cir. 1986)………………………………………....6, 7, 13,

20

*Engalla v. Permanente Medical Group, Inc.*     14, 15,

    (1997) 15 Cal.4th 951………………………………………………………..……7, 8

21

*Fair Hous. of Marin v. Combs*

22

    285 F.3d 899 (9th Cir. 2002)………………………….……………………………7

23

*Farmers Ins. Exchange v. Superior Court*

24

    (1992) 2 Cal.4th 377………………………………………………………………12, 13

25

*Fujitsu Ltd. v. Belkin Int'l, Inc.*

26

    No. 10-CV-03972-LHK, 2011 WL 3903232, at *2 (N.D. Cal. Sept. 6, 2011)…………6

27

*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.*

    (2000) 83 Cal.App.4th 409………………………………………………...………10

28

*Hasso v. Hapke*
    (2014) 227 Cal.App.4th 107……………………………………….……………10

*In re Tuli*
    172 F.3d 707 (9th Cir. 1999)……………………………………..……..5, 6

*Junkin v. Golden West Foreclosure Service, Inc.*
    (2010) 180 Cal.App.4th 1150………………………………………….……10, 12

*Knox v. Dean*
    (2012) 205 Cal.App.4th 417………………………………………….…………10

*Lazar v. Superior Court*
    (1996) 12 Cal.4th 631……………………………………………….………7

*Lee v. Hanley*
    (2015) 61 Ca.4th 1225……………………………………………….………8

*Lehman Bros. Holdings, Inc. v. Bayporte Enters.*
    (N.D.Cal. Oct. 7, 2011, No. C 11-0961-CW (MEJ)) 2011 U.S.Dist. LEXIS 141305,
    at *19 ……………………………………………………..……………14

*Martin v. Ajax Construction Co.*
    (1954) 124 Cal.App.2d 425……………………………………………..…………10

*Mitsui O.S.K. Lines, Ltd. v. CB Freight Int'l, Inc.*
    No. 4:16-cv-05002-KAW, 2016 WL 7650677, at *8 (N.D. Cal. Dec. 16, 2016)………13

*Moore v. Regents of University of California*
    (1990) 51 Cal.3d 120………………………………………………………9

*Oasis West Realty, LLC v. Goldman*
    (2011) 51 Cal.4th 811………………………………………………………9

*Omni Capital Int'l v. Rudolf Wolff & Co.*
    484 U.S. 97 (1987)……………………………………………..……………6

*Penpower Tech. Ltd. v. S.P.C. Tech.*
    627 F. Supp. 2d 1083 (N.D. Cal. 2008)……………………………………………6

*PepsiCo, Inc. v. California Security Cans*
    (C.D. Cal. 2002) 238 F.Supp.2d 1172………………………………..………7, 14, 15

*Reichert v. General Ins. Co.*
    (1968) 68 Cal.2d 822………………………………………………..…………9

*Shanghai Automation Instrument Co., Ltd. v. Kuei*
    194 F. Supp. 2d 995 (N.D. Cal. 2001)……………………………………...……14, 15

*TeleVideo Sys., Inc. v. Heidenthal*
    826 F.2d 915 (9th Cir. 1987)…………………………………………………6, 7, 15

*Teselle v. McLoughlin*
    (2009) 173 Cal.App.4th 156………………………………………………….……8

*Truong Giang Corp. v. Twinstar Tea Corp.*
    No. 06-cv-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)…………13

*Trustees of U.A. Local 393 Pension Fund v. ACS Controls Corp.*
    No. C-08-01282 RMW, 2009 WL 5604379, at *2 (N.D. Cal. Dec. 28, 2009)…………15

**FEDERAL STATUTES AND RULES**

28 U.S.C. § 55…………………………………………………………………… 6

28 U.S.C. § 1332……………………………………………………………...……6

FED. R. CIV. P. 55……………………………………………………………...…6

FED. R. CIV. P. 55(b)………………………………………………………………6, 15

FED. R. CIV. P. 54(d)(1)………………………………………………………17

**CALIFORNIA STATUTES**

Civil Code
    § 1916.1…………………………………………………………………...12
    § 1916.2…………………………………………………………………...12
    § 1917.220…………………………………………………………………12
    § 3287(a)…………………………………………………………………16
    § 3289……………………………………………………………………16

**OTHER AUTHORITIES**

    8 Miller & Starr, Cal. Real Estate (3d ed. 2001) § 21:11, pp. 50–51, 52–54…………10

    Cal Const., Art. XV § 1………………………………………………...……………12

# I.    INTRODUCTION

Plaintiff Kaitlyn Cumbie ("Plaintiff") hereby moves the Court for entry of a default judgment against Defendants Mark Tibbles, Mark Tibbles Enterprises, LLC and Tibbles Property Solutions, LLC (collectively "Defendants") in the amount of $88,000 plus prejudgment interest, pursuant to Federal Rule of Civil Procedure 55(b)(2).  Defendants have failed to answer or defend the well-pleaded allegations of the Complaint, and Plaintiff is therefore entitled to an entry of default judgment against them.

# II.    PROCEDURAL HISTORY

Plaintiff served Defendants with the Summons and Complaint on June 29, 2021. (Docket Nos. 4, 5, 6).  Under Federal Rule of Civil Procedure ("FRCP"), Rule 12(a)(1)(A)(i), the original deadline for Defendants to respond to the Complaint was July 20, 2021.  Shortly after being served, Defendants requested a meeting to discuss the viability of settlement.  Declaration of Galen M. Gentry in Support of Motion for Default Judgment ("Gentry Decl."), ¶ 5.  The deadline to file a responsive pleading was extended, by mutual agreement, while the parties explored possible global settlement. Gentry Decl., ¶ 6. On July 22, 2021, the parties participated in a settlement meeting and tentatively agreed on settlement terms. Gentry Decl., ¶ 7.

Thereafter, on September 1, 2021, Plaintiff's counsel sent a draft settlement agreement to Defendants. Gentry Decl., ¶ 8. Plaintiff's counsel did not hear from Defendants until October 4, 2021, when Defendants informed him that Defendants would not be signing the settlement agreement and that they will instead retain counsel for the purposes of filing an answer to the complaint. Gentry Decl., ¶ 9. Plaintiff's counsel informed Defendants that Plaintiff will request entry of default if Defendants did not file an answer by or before 5:00 p.m. on October 8, 2021. Gentry Decl., ¶ 10. Defendants assured Plaintiff's counsel that their attorney would file an answer before October 8, 2021. *Id*. Plaintiff's counsel has not received any word from Defendants after that. *Id*. Plaintiff thereafter requested entry of default against Defendants on October 12, 2021 (Docket Nos. 7, 8, 9).  On October 13, 2021, default was entered against Defendants. (Docket No. 10).

///
///

### III.    FACTUAL BACKGROUND

In or around 2016, Plaintiff found it necessary to sell her residence that she owned with her sister, the real property commonly known as 8445 Miguel Way, Elverta, California (the "Miguel Way Property").  Complaint ¶¶ 10-12.  Plaintiff met Tibbles on or around February 2017 when he introduced himself as a licensed building contractor who was working with local real estate agents and offered to assist Plaintiff in rehabilitating and selling the Miguel Way Property.  Plaintiff, lacking experience in real estate, gratefully accepted Tibbles' offer and sold the Miguel Way Property to Tibbles in or around May 2017, which Tibbles then renovated the and resold in or around August 2017.   Complaint ¶ 13.

After selling her residence, Tibbles suggested to Plaintiff that she invest some of the cash proceeds of sale in his company, Tibbles Enterprises, in order to facilitate the rehabilitation and sale of another residential property.  Tibbles indicated that Plaintiff would be a "silent partner" who provides the money to finance the acquisition of the property.  Tibbles promised Plaintiff $2,000 per month in profit, over a three-month time span, if Plaintiff invested $30,000 with him with the option to "rollover" the money into a new property or cash out at close of escrow.   Complaint ¶ 14.

In reliance on Tibbles' promises, Plaintiff executed an agreement (the "Investment Contract"), which Tibbles signed both individually and in his capacity as the managing member of Tibbles Enterprises.  The Investment Contract specifically related to the rehabilitation and sale of the real property commonly known as 7226 Elder Street, Rio Linda, California (the "Elder Street Property") and contemplated payment of a total of $6,000 in profits to Plaintiff along with a return of her $30,000 investment upon the sale.  Complaint ¶¶ 15-17.  Plaintiff understood that the Investment Contract created a joint venture among Plaintiff, Tibbles and Tibbles Enterprises since it referred to her as a "silent partner" in purchasing, rehabilitating and selling the Elder Street Property, implying that Plaintiff has delegated to Tibbles and Tibbles Enterprises her right to share in the management of the venture.  Moreover, the Investment Contract expressly stated that Plaintiff's investment was exposed to a risk of loss.   Complaint ¶ 18.

In or around November 2017, after sale of the Elder Street Property was completed, Tibbles asked Plaintiff whether she was interested in "rolling over" her investment into his next real property investment project.  Thereafter, Plaintiff and Tibbles then agreed that the investment terms would

remain the same and that Tibbles would pay Plaintiff $2,000 per month in profits from his real property investment projects for each month that Tibbles and/or Tibbles Enterprises continued to hold Plaintiff's $30,000 principal investment.  Complaint ¶ 19.

In or around May 2018, Plaintiff learned that Tibbles had already sold the property into which her investment had been rolled over and was working on a *third* property - that certain real property commonly known as 7908 16th Street, Elverta, California (the "16th Street Property").  Complaint ¶ 20.

As no information had been provided to Plaintiff about the close of escrow on the second property, Plaintiff inquired of Tibbles as to the status of her investment with Tibbles and Tibbles Enterprises and requested a payout of the $6,000 in profit due to her from the sale of the Elder Street Property.  Complaint ¶ 21.  In response, Tibbles invited Plaintiff to discuss the matter with him in his camper, where he offered her alcohol and propositioned Plaintiff for sex.  Plaintiff politely declined.  Complaint ¶ 22.  Thereafter, Tibbles' communications to her about the status of her investment declined even further, though, in or around May 2018, he did pay her the $6,000 in profits due from the sale of the Elder Street Property.  Complaint ¶ 23; Declaration of Kaitlyn Cumbie ("Cumbie Decl."), ¶¶ 10-11.

In or around October 2018, Tibbles stated to Plaintiff that all of her money had been lost on the 16th Street Property.  However, Tibbles never informed Plaintiff or otherwise consulted with her before he purportedly entered into (or caused Tibbles Enterprises to enter into) the transaction(s) that he later claimed to have resulted in a complete loss of her investment.  To date, Tibbles has failed and refused to provide Plaintiff with any documentation whatsoever regarding such transaction(s).  Complaint ¶ 24.

Tibbles' representations to Plaintiff regarding the status of her investment were false and that, in fact, Tibbles and Tibbles Enterprises have profited substantially through their use of her funds but they are nevertheless seeking to further enhance their profits by defrauding Plaintiff.  Subsequent research through publicly available documents reveals that Tibbles acquired the 16th Avenue Property for $351,000 in or around April 2018 and sold it for $540,000 in or around September 2018, generating an apparent gross profit of $189,000.   Complaint ¶ 25.

In or around October 2019, Tibbles admitted in writing that he was indebted to Plaintiff but continued in his failure to provide Plaintiff with any documentation showing how her money had been invested and whether any profits or losses resulted from Tibbles' and/or Tibble Enterprises' use of

1   Plaintiff's funds.  Complaint ¶ 26; Cumbie Decl., ¶ 13.

2       In or around April 2021, Plaintiff became aware that Tibbles had formed and currently operates

3   Tibbles Property Solutions, LLC as a vehicle for his real property investments.  Plaintiff has alleged in

4   her Complaint that the assets of Tibbles Property Solutions were acquired using the proceeds and profits

5   derived from Plaintiff's initial $30,000 investment.  Complaint ¶ 30.

6       Moreover, Plaintiff has alleged that Tibbles Enterprises and Tibbles Property Solutions are and

7   have been the alter ego limited liability companies of Tibbles by reason of the fact that: (a) Tibbles

8   dominated, influenced and controlled Tibbles Enterprises and Tibbles Property Solutions and the

9   officers thereof as well as the business property and affairs of Tibbles Enterprises and Tibbles Property

10  Solutions; (b) there existed and now exists a unity of interest and ownership between Tibbles, Tibbles

11  Enterprises and Tibbles Property Solutions such that the individuality and separateness has ceased; (c)

12  at all times since the organization of Tibbles Enterprises and Tibbles Property Solutions, Tibbles

13  Enterprises and Tibbles Property Solutions have been and are now mere shells and naked frameworks

14  which Tibbles uses as a conduit for the conduct of his personal business; (d) Tibbles Enterprises and

15  Tibbles Property Solutions were created for the purpose of providing pretense for fraudulent plans,

16  schemes and devices conceived and operated by Tibbles, whereby the income, revenue and profits of

17  Tibbles Enterprises and Tibbles Property Solutions were diverted by Tibbles to himself; and (e) Tibbles

18  Enterprises and Tibbles Property Solutions were organized by Tibbles as a device to avoid individual

19  liability and, accordingly, were formed with insufficient and inadequate capitalization for the business

20  in which such companies have been engaged.

21      By virtue of the foregoing, adherence to the fiction of separate entity existence of Tibbles

22  Enterprises and Tibbles Property Solutions would, under the circumstances, sanction a fraud and

23  promote injustice.  Complaint ¶ 28.  As such, Plaintiff's complaint pleaded each of the separate counts

24  against Defendants and through this motion, seeks entry of default judgment against all Defendants.

25                      **IV.    ARGUMENT**

26  **A.    Jurisdiction and Service of Process**

27      When a party seeks entry of default judgment, courts have a duty to examine their own

28  jurisdiction—both subject matter and personal.  *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999)(internal

citation omitted).  Here, the Court may exercise subject matter jurisdiction pursuant to 28 U.S.C. Section 1332 because there is complete diversity among parties and the amount in controversy exceeds $75,000.  The diversity requirement is met because Plaintiff resides in the State of Idaho and Defendants reside in and have their principal place of business in the State of California.  Complaint ¶¶ 1-4.  The amount in controversy element is met because Plaintiff is seeking $88,000 in compensatory damages, plus prejudgment interest.  Personal jurisdiction is satisfied because Plaintiff served Defendants in California.  Docket Nos. 4, 5, 6.  With respect to personal jurisdiction, Defendants reside in and have their principal place of business in the Eastern District of California.  Complaint at ¶ 2-4; Docket Nos. 4, 5, 6.

The Court must also assess whether the defendant against whom default judgment is sought was properly served with notice of the action.  *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); *Fujitsu Ltd. v. Belkin Int'l, Inc*., No. 10-CV-03972-LHK, 2011 WL 3903232, at *2 (N.D. Cal. Sept. 6, 2011) (citing *Omni Capital Int'l v. Rudolf Wolff & Co*., 484 U.S. 97, 104 (1987)). In this case, Defendants were personally served on June 29, 2021.  Docket Nos. 4, 5, 6.  To date, Defendants have not answered or otherwise responded to the complaint.  Therefore, this Court should grant default judgment under FRCP 55(b) for Plaintiff and against Defendants.

**B.**     **Default Judgment Is Appropriate**

After entry of default, a court may grant default judgment on the merits of the case.  Fed. Rules Civ. Proc., Rule 55, 28 U.S.C. § 55.  After a court determines that jurisdiction is proper, it takes the following seven (7) factors (the "*Eitel* factors") into account in deciding whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon entry of default, the factual allegations of the complaint related to liability are accepted as true and deemed admitted by the non-moving party.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915,

917-18 (9th Cir. 1987).  The Court should exercise its discretion to enter default judgment in this case because consideration of the *Eitel* factors weigh heavily in Plaintiff's favor.

### 1.     Plaintiff Will Be Prejudiced

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and whether such potential prejudice militates in favor of granting a default judgment. *See PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  The possibility of prejudice weighs in favor of default judgment when the plaintiff would lose the ability to recoup an unpaid balance in a breach of contract action.  *Allegro Consultants, Inc. v. Wellington Techs., Inc.,* No. 13-cv-02204-BLF, 2016 WL 1623941, at *2 (N.D. Cal. Apr. 25, 2016).  Similar to *Allegro*, Plaintiff's only recourse here is default judgment because Defendants refused to respond to the Complaint.   Failure to issue a final judgment would serve to encourage similar behavior by these Defendants and others in the future.  Thus, the first *Eitel* factor weighs in favor of granting default judgment here.

### 2.     Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims as pleaded in the complaint.  Courts often analyze these two factors together.  *Dr. JKL Ltd. v. HPC IT Educ. Ctr.,* 749 F. Supp 2d 1038, 1048 (N.D. Cal. 2010).  In analyzing these factors, the Court accepts as true all well-pleaded allegations regarding liability.  *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)(internal citation omitted).  As set forth below, Plaintiff's claims have been pleaded with specificity and merit entry of default judgment against Defendants.

#### a.     *Promissory Fraud*

Plaintiff's first pleaded count is for promissory fraud.  In California, "'[p]romissory fraud' is a subspecies of fraud and deceit.  A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. [Citations.]  An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." *Lazar v. Superior Court* (1996) 12 Cal. 4th 631, 638.  The elements of fraud that will give rise to a tort action are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent

1  to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Engalla v.*

2  *Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973-974.

3       Here, Defendants promised to "roll over" Plaintiff's investment into their next real property

4  investment and continue to pay Plaintiff $2,000 per month in profits along with a return of the entire

5  principal amount of Plaintiff's investment.  Complaint ¶ 31.  This promise was made without the intent

6  to perform, a fact evidenced by Defendants' failure to deliver any payments to Plaintiff after a single

7  $6,000 payment in May 2018, as well as their refusal to provide Plaintiff with any accounting as to

8  their use of her funds.  Complaint at ¶ 32.  Plaintiff reasonably and justifiably relied on Defendants'

9  promises because she had successfully done business with Tibbles before and had no reason to suspect

10 that Defendants would act to defraud her in subsequent transactions.  Complaint at ¶ 33.  As a result of

11 the fraudulent acts of Defendants, Plaintiff has been damaged in the amount of $88,000.  Complaint at ¶

12 35.

13        **b.**     ***Accounting***

14      Plaintiff has also properly asserted a claim for accounting, which has two elements: (1) "that a

15 relationship exists between the plaintiff and defendant that requires an accounting" and (2) "that some

16 balance is due the plaintiff that can only be ascertained by an accounting."  *Teselle v. McLoughlin*

17 (2009) 173 Cal.App.4th 156, 179.  Here, and despite repeated demands by Plaintiff, Defendants have

18 refused and continue to refuse to provide an accounting of their disposition of Plaintiff's investment.

19 Defendants have not provided any financial records, corporate records or any accounting records

20 regarding the performance of Plaintiff's investment.  Complaint ¶ 38.  Plaintiff is informed and believes

21 and based thereon alleges that the accounts of Defendants are so complicated that an ordinary legal

22 action based on a fixed sum is impractical.  Complaint ¶ 39.  Therefore, Plaintiff is entitled to an

23 accounting of all funds she invested with Defendants at the direct request of Tibbles.  Complaint ¶ 40.

24        **c.**     ***Conversion***

25      Plaintiff's conversion claim is likewise substantively and sufficiently pleaded.  Conversion is the

26 wrongful exercise of dominion over the property of another, which the following elements: (1) that

27 plaintiff has ownership or right to possession of property; (2) defendant's conversion by a wrongful act

28 or disposition of property rights; and (3) damages.  *Lee v. Hanley* (2015) 61 Ca.4th 1225, 1240.

1 Conversion is a strict liability tort that neither rests in the knowledge nor the intent of the defendant.

2 Instead, the tort consists in the breach of an absolute duty and the act of conversion itself is tortious.

3 Questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial.

4 *Moore v. Regents of University of California* (1990) 51 Cal. 3d 120, 14, and fn. 38.

5       Defendants committed conversion by taking Plaintiff's funds, without permission, for their own

6 use, thereby exerting unapproved dominion and control over Plaintiff's monies.  Complaint ¶ 42.

7 Plaintiff has repeatedly demanded that Defendants return the funds that she invested with them, but

8 they have continually refused to do so.  Complaint ¶ 43.  As a direct and proximate result of the

9 conversion, Plaintiff has been harmed and is now entitled to an award of damages in the amount

10 $30,000.  Complaint ¶ 44.

11         ***d.***     ***Breach of Contract***

12       Plaintiff has sufficiently asserted a claim for breach of contract.  In California, a breach of

13 contract claim requires: (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3)

14 defendant's breach, and (4) the resulting damages to plaintiff.  *Reichert v. General Ins. Co.* (1968) 68

15 Cal.2d 822, 830; *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal. 4th 811, 821.

16       Here, Plaintiff and Defendants executed the Investment Contract in or around July 31, 2017,

17 which was later was modified by the parties in or around November of 2017.  Per the terms of the

18 contract, Plaintiff contributed $30,000 of her own funds as a "silent partner" for Defendants to

19 purchase, rehabilitate, and thereafter sell real property.  Plaintiff was to receive $2,000 per month in

20 profits for each month that Defendants continued to hold Plaintiff's principal investment.  Complaint ¶

21 19.

22       Plaintiff performed all conditions, covenants, and promises to be performed under the

23 Investment Contract.  Complaint ¶ 46.  However, beginning in October 2018 and continuing thereafter,

24 Defendants breached the Investment Contract by: (a) failing to pay to Plaintiff the agreed-upon $2,000

25 per month share of profits arising from the real estate investments of Defendants, (b) failing to repay to

26 Plaintiff her original $30,000 investment; and (c) failing to timely inform Plaintiff as to the status of her

27 invested monies.  Complaint ¶ 47.  By reason of the foregoing breaches by Defendants, and as a direct

28 proximate result of the failure and refusal of Defendants to perform their obligations under the

1    Investment Contract, Plaintiff has been damaged in the amount of $88,000.  Complaint ¶ 48.

2                    **e.        Breach of Fiduciary Duty**

3           Plaintiff's complaint properly asserted a claim for breach of fiduciary duty.  The elements of a

4    claim for breach of fiduciary duty are "the existence of a fiduciary relationship, its breach, and damage

5    proximately caused by that breach. [Citation.]"  *Knox v. Dean* (2012) 205 Cal.App.4th 417, 432.

6           "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly

7    undertake to act on behalf and for the benefit of another or must enter into a relationship which imposes

8    that undertaking as a matter of law. [Citations.]"  *Committee on Children's Television, Inc. v. General*

9    *Foods Corp.* (1983) 35 Cal.3d 197, 221.  Moreover, "[f]iduciary duties are imposed by law in certain

10   technical, legal relationships such as those between partners or joint venturers [citation], … trustees and

11   beneficiaries, principals and agents, and attorneys and clients [citation]."  *GAB Business Services, Inc.*

12   *v. Lindsey & Newsom Claim Services, Inc.* (2000) 83 Cal.App.4th 409, 416.  A fiduciary duty under

13   common law may arise "when one person enters into a confidential relationship with another."  *Id.* at p.

14   417.  It is a question of fact whether a party has entered into a confidential relationship that gives rise to

15   a fiduciary duty under common law.  See *Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th

16   938, 960–962; *Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 140.

17          While there is no precise formula for determining whether a particular transaction is a bona fide

18   joint venture, several factors have been identified as relevant when deciding that question, including:

19   (1) whether there is an absolute obligation of repayment; (2) whether the investor may suffer a risk of

20   loss; (3) whether the investor has any right to participate in management; and (4) the identity of the

21   seller.  "If the venture between the parties involves the acquisition of property from a third party, the

22   courts tend to conclude that the arrangement between the parties was a risk capital venture and not a

23   loan."  *Junkin v. Golden West Foreclosure Service, Inc.* (2010) 180 Cal.App.4th 1150, 1155-1156; 8

24   Miller & Starr, Cal. Real Estate (3d ed. 2001) § 21:11, pp. 50–51, 52–54, and cases cited therein.  The

25   presence or absence of any one factor is not conclusive when characterizing a transaction.  *Martin v.*

26   *Ajax Construction Co.* (1954) 124 Cal.App.2d 425, 433.

27          Here, it is clear from examining the business relationship between Plaintiff and Defendants that

28   a bona fide joint venture was formed.  Plaintiff and Defendant Tibbles, individually and on behalf of

the other named Defendants, entered into a written agreement in which Plaintiff invested a $30,000 capital contribution for the purpose of purchasing, rehabilitating and selling real property for profit. Cumbie Decl., ¶ 7; Ex. A.  The Investment Agreement stated that Plaintiff was "a silent partner regarding the purchasing, rehab and selling of said property", which is clear indication that both Plaintiff and Defendants believed the Investment Agreement to represent a joint venture.  *Id*.

Moreover, the terms of the Investment Agreement did not guarantee the absolute right of repayment of the capital contribution, which is an important factor when determining whether the agreement was a loan or joint venture.  Plaintiff was neither guaranteed any return on her initial contribution, and The Investment Agreement warned Plaintiff that "there is always a risk investing and consideration should be made before investing."  *Id*.  The lack of a guaranteed repayment and the language warning of loss strongly supports the formation of a joint venture.

Moreover, the nature of the transaction did not even guarantee Plaintiff against the loss of her investment capital.  Plaintiff assumed a serious risk by investing in real property, which could have been lost due to fire, flood, the cratering of the real estate market, and other unforeseen risks such as title defects or condemnation.  If the venture failed, Plaintiff's investment could be worth nothing. Clearly, she assumed a risk that she might suffer a complete or partial loss of capital.

While there no evidence that Plaintiff participated in the direct management of the venture, there is also no evidence that Plaintiff was precluded from doing so.  The Investment Agreement referred to Plaintiff as a "silent partner" and Defendants did take the lead in carrying out the purpose of the venture.  However, there is nothing in the agreement that restricted Plaintiff from participating in the venture if chose to, and any control relinquished was voluntary under the Investment Agreement.

Finally, Plaintiff and Defendants purchased the properties from third parties, which is another fact that supports the conclusion that a joint venture existed under California law. *Id.*

Weighing these factors, the Investment Agreement terms, and the parties' conduct supports the creation of a joint venture, which establishes that Defendants owed Plaintiff the duty of loyalty and the duty of care.  Complaint ¶ 51.  Defendants breached the fiduciary duty of care and loyalty by failing to effectively manage the costs and expenses of their joint venture in order to ensure that the venture was profitable, as well as by electing to sell the 16th Street Property at a loss without notifying or consulting

1  Plaintiff prior to the transaction(s).  Complaint ¶ 52.  Defendants further breached the fiduciary duty of

2  loyalty by diverting the proceeds and profits of the joint venture for their own use and by paying

3  themselves to the exclusion of Plaintiff.  As a direct and proximate result of these breaches, Plaintiff

4  suffered clear and calculable damages in the contract amount of $88,000.  Complaint ¶¶ 53-54.

5       Moreover, in addition to establishing the duties owed to Plaintiff, the fact that Plaintiff and

6  Defendants formed a bona fide joint venture is important when examining the interest or profits

7  promised to Plaintiff under the Investment Agreement.  In California, the maximum interest rates that

8  can be charged are set forth in the Constitution, though it can vary with economic conditions.  See Cal

9  Const, Art. XV § 1.  California's Usury Law is also subject to many exceptions set forth in the

10  Constitution, various statutes, and case law.  See Civ. Code, §§ 1916.1, 1916.2, 1917.220.  However,

11  "[w]here the relationship between the parties is a bona fide joint venture or partnership, the advance by

12  the partners or joint venturers is an investment and not a loan, and the profit or return earned by the

13  investor is not subject to the statutory maximum limitations of the Usury Law."  *Junkin*, *supra*, 180

14  Cal.App.4th at p. 1155.

15       Since Plaintiff and Defendants entered into a joint venture, Defendants cannot argue that the

16  rate of return owed to Plaintiff was usurious in any way.  In fact, Tibbles himself proposed and drafted

17  the agreement, and represented that he was experienced and knowledgeable in buying, rehabilitating

18  and selling real property.  Complaint ¶ 13.  Plaintiff therefore respectfully requests that the Court

19  recognize the formation of the joint venture and the resultant exception to the restrictions of California's

20  Usury Laws."

21           *f.*     **Unfair Business Practices**

22       Finally, Plaintiff asserted a claim for unfair business practices, which arises from the California

23  Unfair Practices Act.  The Business and Professions Code broadly defines "unfair competition" as, inter

24  alia, any "unlawful, unfair or fraudulent business practice …."  "Unlawful business activity" proscribed

25  under section 17200 includes " 'anything that can properly be called a business practice and that at the

26  same time is forbidden by law.' "  *Barquis v. Merchants Collection Assn*. (1972) 7 Cal.3d 94, 11.  "[i]n

27  essence, an action based on Business and Professions Code section 17200 to redress an unlawful

28  business practice 'borrows' violations of other laws and treats these violations, when committed

pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383.

Here, Defendants have engaged in engaged in unfair business practices by (1) making false promises to Plaintiff which induced her to enter into a joint venture agreement; (2) breaching the fiduciary duties owed to Plaintiff by mismanaging or otherwise converting Plaintiff's funds; (3) and unjustly enriching themselves in the process.  As a result of Defendants wrongful acts, Plaintiff is entitled to restitution in the amount pleaded in her complaint.  Complaint ¶¶ 57-59.

### 3.  The Sum of Money at Stake in the Action

The fourth *Eitel* factor regards the sum of money at stake in the action.  "When the money at stake is substantial, default judgment is discouraged."  *Bd. of Trs. v. Core Concrete Constr., Inc.,* No. 11-02532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012).  However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate."  *Id.* "In determining whether the amount at stake is reasonable, courts consider a plaintiff's declarations, calculations, and other documentation of damages."  *Truong Giang Corp. v. Twinstar Tea Corp.,* No. 06-cv-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)(internal citation omitted).

Plaintiff seeks money damages in the amount of $88,000, which represents the amount owed under the Investment Contract.  Plaintiff also seeks prejudgment interest and costs.  "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Id.*  Here, Plaintiff is seeking $88,000 against Defendants plus prejudgment interest and costs.

The amount at stake, though significant to Plaintiff, is specifically tailored to the harm caused by Defendants' breach.  Other courts have awarded substantially more than Plaintiff's requests in other breach of contract cases on default judgment.  *See Mitsui O.S.K. Lines, Ltd. v. CB Freight Int'l, Inc.,* No. 4:16-cv-05002-KAW, 2016 WL 7650677, at *8 (N.D. Cal. Dec. 16, 2016) (awarding $1,056,854 in damages for breach of contract).  Plaintiff's request is reasonable, well supported, and flows directly from Defendants' breach of the underlying contract, which favors granting default judgment.

///

### 4.     Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor relates to whether any material facts may remain in dispute. "Where, as here, a plaintiff has filed a well-pleaded complaint alleging the elements necessary to establish its claims, and the Clerk has entered default upon defendant's failure to answer, a court may find the possibility of a dispute as to material facts unlikely."  *See Capitol Records v. Barrera*, No. 06-07212-JSW, 2007 WL 1113949, at *3 (N.D. Cal. Apr. 13, 2007).

Here, though personally served, Defendants failed to appear or respond, and the Clerk entered defaults their accordingly.  Defendants have not appeared in this action to dispute any material facts. *PepsiCo, Inc. v. Cal. Sec. Cans* (C.D. Cal. 2002) 238 F.Supp.2d 1172, 1177.  Plaintiff's well-pleaded allegations, accepted as true, sufficiently allege and support her claims.  The record demonstrates Defendants' refusal to respond to the Complaint despite assurances that they would, so there is no reasonable possibility of a dispute of material facts.  Because a genuine dispute concerning the material facts is highly unlikely, this factor weighs in favor of granting default judgment against Defendants.

### 5.     Excusable Neglect

The sixth *Eitel* factor requires the court to review whether a defendant's default is due to excusable neglect. "Where there is no indication that the default was a result of excusable neglect, this factor will weigh in favor of default judgment." *Lehman Bros. Holdings, Inc. v. Bayporte Enters.* (N.D.Cal. Oct. 7, 2011, No. C 11-0961-CW (MEJ)) 2011 U.S.Dist. LEXIS 141305, at *19.

Here, Defendants were duly served with a copy of the summons and complaint on June 29, 2021, and they acknowledged receipt by immediately reaching out to Plaintiff's counsel to discuss a possible global settlement.  Gentry Decl., ¶¶ 5-8.  After Defendants refused to sign the settlement agreement, they assured Plaintiff's counsel that they would retain an attorney to file an answer by October 8, 2021.  Gentry Decl., ¶¶ 9-10. They failed to do so. Gentry Decl., ¶ 11.  After not hearing from Defendants and not seeing an answer on file, Plaintiff, through her counsel, filed and served her requests for entry of default against Defendants.  Gentry Decl., ¶ 14.  Despite being aware of this lawsuit and despite their awareness that requests for default had been filed against them and entered by the Court, Defendants have not appeared in this matter, and nothing in the record suggests that their failure to appear is based on excusable neglect.  *See Shanghai Automation Instrument Co., Ltd. v. Kuei,*

1 | 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

2 |     **6.    Policy Favoring Decisions on the Merits**

3 |     The seventh *Eitel* factor requires a consideration of whether the strong policy favoring a

4 | decision on the merits would preclude an entry of default judgment.  Although federal policy favors

5 | decisions on the merits whenever reasonably possible, this policy is not dispositive, particularly when a

6 | defendant fails to plead or otherwise defend despite proper service and notice of default. See, e.g.,

7 | *Trustees of U.A. Local 393 Pension Fund v. ACS Controls Corp.*, No. C-08-01282 RMW, 2009 WL

8 | 5604379, at *2 (N.D. Cal. Dec. 28, 2009) ("The policy underlying the Federal Rules of Civil Procedure

9 | favors deciding a case on its merits, but doing so is unfeasible when a defendant does not litigate the

10 | case.") *see also PepsiCo, Inc. v. California Security Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal.

11 | 2002)(noting that the policy preference for deciding cases on their merits "standing alone is not

12 | dispositive" and "does not preclude a court from granting default judgment")(internal citations omitted).

13 |     Here, the Defendants failed to defend this action despite proper service and ample time to do so,

14 | making it unfeasible for this Court to decide this case on the merits.  As demonstrated above, each one

15 | of the factors set forth in *Eitel* weigh in favor of granting Plaintiff's motion for default judgment.

16 | **C.   <u>Relief Sought</u>**

17 |     Plaintiff seeks $88,000.00 for compensatory damages, plus prejudgment interest, plus attorney

18 | fees and costs in an amount to be determined upon subsequent motion.

19 |     **1.    Compensatory Damages**

20 |     In assessing the appropriate amount of damages on default judgment, the Court does not

21 | presume the truth of any factual allegations related to the amount of damages.  *TeleVideo Sys., 826 F.2d*

22 | *at 917-18*.  Thus, Plaintiff is required to prove all damages sought in the complaint, and the Court must

23 | ensure the amount is reasonable and demonstrated by the evidence through testimony or written

24 | affidavit. Fed. R. Civ. P. 55(b); *Televideo Sys.,* 826 F.2d at 917-18.

25 |     Plaintiff requests $88,000 in compensatory damages, constituting the $30,000 of Plaintiff's

26 | initial investment that was to be returned to her under the Investment Contract, plus 29 months of

27 | $2,000 payments that were to be made for each month that Defendants continued to hold Plaintiff's

28 | $30,000 principal investment.  Plaintiff submits her declaration, including all incorporated references,

1  and all supporting documents.  Because the record contains all documents related to the terms,

2  conditions, formation, and breach of the contract, Plaintiff has sufficiently demonstrated her damages.

3  **2.      Prejudgment Interest**

4  Plaintiff also requests prejudgment interest on the $88,000 owed to her at the time of filing of

5  her complaint.  "Prejudgment interest is a component of substantive damages and, in a diversity case,

6  is calculated using the rate determined by the state law." *Bolt v. Merrimack Pharm., Inc.* (2005 US

7  Dist.), Lexis 46591*21 (E.D. Cal. Sept. 20, 2005). The California rule, codified in Civil Code § 3289,

8  provides as follows:

9  
10  > (a) Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation.
> (b) If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach.
> For the purposes of this subdivision, the term contract shall not include a note secured by a deed of trust on real property.

11  
12  
13  

14  Courts may award prejudgment interest on contract claims where damages are certain or are

15  "capable of being made certain by calculation."  Cal. Civ. Code § 3287(a).  The test for determining

16  certainty under Section 3287(a) is whether "the defendant actually knows the amount owed or could

17  have computed the amount from reasonably available information."  *Children's Hosp. & Med. Ctr. v.*

18  *Bonta* (2002) 97 Cal. App. 4th 740, 774.

19  The Investment Contract is direct parole evidence that both parties could use to compute the

20  amount owed, as the formula and figures are expressly provided therein.  The record establishes that

21  Defendants actually know the amount owed or could easily compute such amount based on the

22  Investment Contract.  Plaintiff is therefore entitled to prejudgment interest 10% per annum because this

23  is a fixed amount due from a specific date, June 21, 2021.  Cal. Civ. Code § 3289.

24  Based on the $88,000 amount Plaintiff seeks in damages, Plaintiff is entitled to $24.11 per day

25  in prejudgment interest from and after the date that Plaintiff's Complaint was filed.  Because 304 days

26  have passed between June 21, 2022, the date that Plaintiff filed her complaint and the date of this

27  motion, Plaintiff is presently entitled to prejudgment interest in the amount of $7,329.44, plus an

28  additional $24.11 per day for each day until judgment is entered.  Gentry Decl., ¶ 15.

1

**3.     Costs**

2      Pursuant to Federal Rule of Civil Procedure 54(d)(1), Plaintiff requests that her allowable costs

3  in the amount of $592.00 be added to the default judgment.   Gentry Decl., ¶16.

4                           **V.     CONCLUSION**

5      For these reasons, Plaintiff respectfully requests that the Court enter this unopposed motion for

6  default judgment against Defendants and award $95,329.44 to Plaintiff for her compensatory damages

7  including prejudgment interest, and award $592.00 to Plaintiff for her costs.

8

9  Dated: April 21, 2022                    HUGHEY PHILLIPS, LLP

10

11                                _/s/ Galen M. Gentry_____
                                   Galen M. Gentry

12                                 Attorney for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28