Galen M. Gentry, SBN 308873
HUGHEY PHILLIPS, LLP
520 9th Street, Suite 230
Sacramento, California 95814
Telephone: 916.758.2100
Facsimile: 916.758.2200
ggentry@hugheyphillipsllp.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAITLYN CUMBIE, an individual,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>MARK TIBBLES, an individual; MARK TIBBLES ENTERPRISES, LLC, a California limited liability company; TIBBLES PROPERTY SOLUTIONS, LLC, a California limited liability company; and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants. | Case No. 2:21-cv-01090-JAM-AC<br><br>**DECLARATION OF KAITLYN CUMBIE IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS MARK TIBBLES, MARK TIBBLES ENTERPRISES, LLC AND TIBBLES PROPERTY SOLUTIONS, LLC**<br><br>Date:　　　　May 25, 2022<br>Time:　　　　10:00 a.m.<br>Courtroom:　26<br><br>Action Filed: June 18, 2021<br>Trial Date: None |

　　　I, Kaitlyn Cumbie, declare and state as follows:

　　　1.　　I am the Plaintiff in this matter. The facts set forth herein are of my own personal knowledge, and, if called as a witness, I could and would testify competently thereto.

　　　2.　　I was orphaned when I was approximately 8 years of age, after both of my parents tragically passed away from unrelated causes over a two-month period of time in 2001.

　　　3.　　Myself and my younger sister were raised by relatives in the area, and we began to reside together at the real property commonly known as 8445 Miguel Way, Elverta, California (the "Miguel Way Property") that we inherited from our parents when we became adults in or around 2012.

4. In or around 2016, my sister developed certain personal problems that made it necessary for me to arrange for the sale of the Miguel Way Property so my sister and I could each live in our own separate residences.

5. In or around February 2017, I met Mark Tibbles, one of the defendants in this case, when he came to my residence and introduced himself as a licensed building contractor who helps people to sell properties. At or around that time, he offered to assist me in rehabilitating and selling the Miguel Way Property. I accepted Mr. Tibbles' offer and sold the Miguel Way Property to Tibbles in or around May 2017. Mr. Tibbles then renovated the Miguel Way Property and resold such real property in or around August 2017.

6. In or around June 2017, after the sale of the Miguel Way Property had been completed, Mr. Tibbles suggested to me that I should invest some of the cash proceeds from the sale of such property in his company, Tibbles Enterprises, in order to facilitate the rehabilitation and sale of another residential property. Mr. Tibbles indicated to me that I would be a "silent partner" who provides the money to finance the acquisition of the property and promised me $2,000 per month in profit, over a three-month time span, if I invested $30,000 with him. He also indicated that I would have the option to roll over the money into a new property or just cash out at close of escrow.

7. In reliance on Mr. Tibbles' promises, I provided $30,000 to Mr. Tibbles and Tibbles Enterprises on or around July 31, 2017. In connection with this investment, myself and Mr. Tibbles signed the investment contract attached hereto as Exhibit "A" (the "Investment Contract").

8. The Investment Contract specifically related to the rehabilitation and sale of the real property commonly known as 7226 Elder Street, Rio Linda, California (the "Elder Street Property") and contemplated payment of a total of $6,000 in profits to me along with a return of my $30,000 investment upon the sale of the Elder Street Property.

9. In or around November 2017, after the sale of the Elder Street Property had been completed, rather than returning to me the principal amount of my $30,000 investment and the earned profits, Mr. Tibbles asked me whether I would be interested in "rolling over" my investment into his next real property project. As it appeared to me that Mr. Tibbles and his company were able to generate a solid return on investment, I agreed. Mr. Tibbles and I agreed that the investment terms

would remain the same and that Mr. Tibbles would pay me $2,000 per month in profits from his real property investment projects for each month while Mr. Tibbles and/or Tibbles Enterprises continued to hold my $30,000 principal investment.

10. In or around May 2018, I came to learn that Mr. Tibbles had already flipped the property into which my investment had been rolled over and was working on a third property, specifically, the real property commonly known as 7908 16th Street, Elverta, California (the "16th Street Property").

11. Given that no information had been provided to me about the close of escrow on the second property, I became concerned and felt that I should at least receive payment of the profits due to me from the initial property investment. Therefore, I inquired of Mr. Tibbles as to the status of my investment with him and his company and requested a payout from Mr. Tibbles of the $6,000 in profit due to me from the sale of the Elder Street Property. Although Mr. Tibbles paid me $6,000 in profits at that time, he did not return any portion of my original $30,000 investment.

12. In or around October 2018, Mr. Tibbles stated to me that all of my money had been lost on the 16th Street Property. However, Mr. Tibbles had never informed me or otherwise consulted with me before he purportedly entered into (or caused Tibbles Enterprises to enter into) the transaction(s) that he later claimed to have resulted in a complete loss of my investment.

13. In or around October 2019, Tibbles admitted in writing that he was indebted to me but still did not provide me with any documentation showing how my money had been invested and whether any profits or losses resulted from his or his company's use of my money.

14. I calculate the amount owing from Mr. Tibbles and his company to me as being at least $88,000, not including prejudgment interest, which includes the original principal amount of $30,000, plus 29 months of $2,000 per month profit payments. I have excluded from this calculation the $6,000 that Mr. Tibbles delivered to me in or around May 2018.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on April 21, 2022, in San Diego, California.

                                               /s/ Kaitlyn Cumbie
                                               Kaitlyn Cumbie

**EXHIBIT "A"**

4/31/17

This is a binding contract, personnal investment for K. Cumbie in Mark Tibbles Enterprises, LLC. K. Cumbie is investing in a personal loan with Mark Tibbles Enterprises and is a silent partner regarding the purchasing, rehab and selling of said property. The approximate time frame is three months but not certain due to unforseen circumstances in rehad, occupatuion of prior owners, and the real estate market in general. There is not an increase in interest, if a unforseen delay occurs for the reason above. There is always a risk in investing and consideration should be made before investing. K. Cumbie will be notfied of the progress and sale of said property in a timely manner as the process infolds.

MARK TIBBLES
*[signature]*
7/31/17

Kaitlyn Cumbie
*[signature]*
7/31/17

Investment w/ Mark   agreement

$30,000 up front
$6,000 return profit ($2,000/month x 3 mos)

*[signature]*
MARK TIBBLES